1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PALANTIR TECHNOLOGIES INC.,

          Plaintiff,

      v.

MARC L. ABRAMOWITZ, et al.,

          Defendants.

Case No.  16-cv-5857-PJH

**ORDER GRANTING MOTION TO REMAND**

      The motion of plaintiff Palantir Technologies, Inc. ("Palantir") to remand the above-entitled action to the Superior Court of California, County of Santa Clara, came on for hearing before this court on February 15, 2017.  Palantir appeared by its counsel John Zach, David Zifkin, Fiona Tang, and Adam Eltoukhy.  Defendants Marc L. Abramowitz ("Abramowitz"), Marc Abramowitz Charitable Trust No. 2, and KT4 Partners LLC ("KT4") appeared by their counsel Jonathan Pitt.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

      Palantir, which is based in Palo Alto, California, is a "software and services company that specializes in data analytics."  First Amended Complaint ("FAC") ¶¶ 8, 13.  Founded in 2004, it is "a leader in its industry."  FAC ¶ 13.  Palantir's products are used by government, and by commercial and non-profit institutions "to solve problems the company's founders had not even dreamed of back in 2004."  Id.  Palantir focuses on developing and building "platforms for integrating, managing, and securing data, on top of

1   which it layers applications for fully interactive, human-driven machine-assisted analysis."

2   FAC ¶ 14.  Palantir is also involved in research and development, and it spends millions

3   of dollars each year to "expand its business and seek out new opportunities."  FAC ¶ 17.

4          According to Palantir, this litigation relates to defendants' misappropriation of

5   Palantir's proprietary trade secret and business information, concerning technologies for

6                   (i) interpreting and analyzing data in the healthcare space for
                    clinical drug trials and for health insurance risk assessments
7                   (the "Healthcare Technology"); (ii) cyber insurance technology
                    and related cybersecurity technology for use of customer
8                   consortia to improve cybersecurity (the "Cyber Insurance and
                    Cybersecurity Technology"); and (iii) interpreting and
9                   analyzing data in connection with natural resources
                    exploration and management (the "Natural Resources
10                  Exploration Technology").

11  FAC ¶ 18.  It also relates to defendants' "misappropriation of Palantir's trade secret

12  business plans and customer lists related to these technologies."  Id.

13         Palantir's initial funding came from a variety of sources, including the company's

14  founders.  FAC ¶ 23.  Abramowitz was an early investor in Palantir, through KT4 and

15  "other entities he controls."  Id.  Allegedly, "[t]hrough the years, Abramowitz was involved

16  with the business of Palantir."  FAC ¶ 24.  However, "[r]ather than acting as a passive

17  investor, he became a regular fixture[,]" visiting Palantir more than 30 times between

18  2010-2015.  Id.  Indeed, "Abramowitz spent so much time at Palantir that in 2014 he

19  requested an office at the company."  Id.

20         Abramowitz developed relationships with the company's founders, officers, and

21  employees, and was allegedly "viewed as a trusted investor and advisor" by the founders

22  and senior employees.  FAC ¶ 25.  According to Palantir, Abramowitz "often inquired

23  about specific Palantir projects" and on several occasions, the company provided him –

24  in his capacity as a shareholder and advisor – with information about technology

25  including the Healthcare Technology, the Cyber Insurance and Cybersecurity

26  Technology, and the Natural Resources Exploration Technology.  FAC ¶ 26.  Palantir

27  asserts that it also provided Abramowitz – at his request – with information about

28  proprietary business plans and customer lists for these technologies.  Id.

United States District Court
Northern District of California

Palantir and Abramowitz entered into confidentiality agreements.  FAC ¶ 27.
These agreements included provisions in Preferred Stock Transfer Agreements in 2012
and 2015, and a Nondisclosure Agreement in 2014.  FAC ¶¶ 28-30.  Palantir asserts,
however, by 2014, Abramowitz had embarked on a scheme to discover Palantir trade
secrets and convert them for his own use and profit – in particular, trade secrets related
to the Healthcare, Cyber Insurance and Cybersecurity, and Natural Resources
Exploration Technologies.  FAC ¶ 31; see also FAC ¶¶ 32-40 (Healthcare Technology),
¶¶ 41-40 (Cyber Insurance and Cybersecurity Technology); ¶¶ 50-57 (Natural Resources
Exploration Technology).

For example, Palantir alleges, in October and December 2014, Abramowitz filed
patent applications ("the Patent Applications") with the U.S. Patent and Trademark Office
("USPTO"), seeking to patent "systems, methods, and concepts" concerning Palantir's
Healthcare Technology, Cyber Insurance and Cybersecurity Technology, and Natural
Resources Exploration Technology, for which he falsely claimed to be the sole owner and
inventor.  FAC ¶¶ 38, 46-47, 51.

Palantir asserts that "[i]n furtherance of [Abramowitz's] scheme," KT4 sent Palantir
a letter through counsel on August 16, 2016, demanding information pertaining to the
Investors' Rights Agreement ("IRA").  FAC ¶ 58.  Under the February 15, 2008 version of
the IRA (the version invoked in the letter) and the July 8, 2015 version (the version in
effect at the time Abramowitz sent the letter), the agreement granted certain rights to
receive information from Palantir to anyone who was a "Major Investor" in Palantir
(defined in the IRA as anyone with at least 5 million shares of certain types of Palantir
stock).  Id.  In the August 16, 2016, KT4 stated that it was a Major Investor of Palantir,
and demanded that Palantir produce documents and provide information to its counsel
pursuant to the February 2008 IRA.  FAC ¶ 59.

Palantir asserts, however, that the IRA provides for Major Investors to receive
such information, but does not allow for counsel or anyone other than a Major Investor to
receive the information.  Id.  Palantir adds that even were KT4 a Major Investor (which

1    Palantir disputes), and even had the IRA not been again amended effective September 1,

2    2016, Abramowitz's breaches of confidentiality and misappropriation of trade secrets

3    would preclude him from obtaining confidential and proprietary information through the

4    IRA.  FAC ¶¶ 60-64.

5            Palantir filed the original complaint on September 1, 2016, in Santa Clara Superior

6    Court, and filed the FAC on September 23, 2016, alleging five state-law causes of action

7    – (1) breach of contract (breach of confidentiality agreements); (2) breach of the implied

8    covenant of good faith and fair dealing; (3) unfair competition, in violation of California

9    Business & Professions Code § 17200 ("UCL"); (4) misappropriation of trade secrets in

10   violation of California Civil Code § 3426, et seq.; and (5) declaratory relief (seeking a

11   judicial declaration that KT4 is not entitled to Palantir's financial information pursuant to

12   the IRA).

13           Defendants removed the case on October 11, 2016, asserting federal question

14   jurisdiction.  Defendants allege that the FAC is "artfully pled as a series of putative state-

15   law claims[.]"  Notice of Removal ¶ 2.  They contend that Palantir seeks to have itself

16   declared the sole inventor of three technologies that were in fact invented and developed

17   by Abramowitz as the sole or joint inventor, and that involve no inventive contribution by

18   Palantir or anyone working on Palantir's behalf; that it seeks an order enjoining

19   Abramowitz from continuing to pursue the three Patent Applications filed with the

20   USPTO; and that it premises such relief, and the purported state-law causes of action,

21   upon the assertion that it was Palantir, not Abramowitz, who invented the technologies at

22   issue, and that Abramowitz's alleged contrary representations to the USPTO were false.

23   Id.  Based on this, defendants claim that Palantir's claims necessarily raise substantial

24   questions of federal patent law that can be resolved only by a federal court.  Id.

25           On November 11, 2016, Palantir filed the present motion to remand, asserting that

26   the FAC  does not allege any federal claims, that its claims do not arise under federal law

27   or raise a "substantial" issue of federal law, and that no issue of federal law is "actually

28   disputed."  Palantir also seeks attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).

4

**DISCUSSION**

A.    Legal Standard

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court.  28 U.S.C. § 1441.  Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure.  28 U.S.C. § 1447(c).  The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction.  Id.

The removal statutes are construed restrictively, so as to limit removal jurisdiction.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).  There is a "strong presumption" against removal jurisdiction.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  This means that the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal.  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009).  Doubts as to removability are resolved in favor of remanding the case to state court.  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

B.    Plaintiff's Motion

Palantir contends that the FAC does not assert any federal claims, and that the five state-law claims arise from the misappropriation of its trade secrets by Abramowitz and KT4, which occurred prior to the filing of the Patent Applications.  Palantir asserts that removal was improper, as the court lacks federal question jurisdiction over the state-law claims.

Defendants oppose the motion, arguing that the case was properly removed.  They assert that, while the "artfully pled complaint . . . carefully avoids calling any of its causes of action or demanded relief 'federal' in nature," Palantir is seeking to have itself declared to be the sole inventor of three technologies actually invented by Abramowitz as

1  sole or joint inventor.  Specifically, defendants point to the request for injunctive relief in

2  the prayer for relief, and to the UCL claim.  Defendants assert that Palantir is attempting

3  to use the state courts to enjoin Abramowitz from pursuing protection in the USPTO for

4  technologies he developed.

5      In the prayer for relief, Palantir requests a preliminary and permanent injunction

6  restraining defendants from (among other things) "continuing to pursue [d]efendants'

7  patent applications[.]"  Defendants refer to this as "the PTO injunction."  In their

8  opposition to Palantir's motion, defendants contend that only federal patent law can

9  supply the substantive rules and procedures governing patent applications.  They argue

10  that because Palantir seeks this relief on the basis that it is the true inventor of the

11  technologies in the Patent Applications,[1] any court deciding whether to grant the "PTO

12  Injunction" must therefore resolve the issue of inventorship.

13      In the UCL claim, Palantir alleges that defendants' business acts and practices

14  were fraudulent "because a reasonable person would likely be deceived by [d]efendant's

15  [sic] false statements and claims, including that they invented and own Palantir's

16  inventions."  FAC ¶ 38.  Defendants argue that the FAC provides only one basis on which

17  defendants could be found liable under the "fraudulent" prong of the UCL claim –

18  Abramowitz's alleged false statements to the USPTO regarding his inventorship of the

19  technologies listed in the Patent Applications.  In addition, although they have not moved

20  to dismiss any of the claims asserted in the FAC, defendants also contend in their

21  opposition to Palantir's motion that allegations of trade secret misappropriation cannot

22  support an unfair competition claim under Business & Professions Code § 17200.

23      The court finds that the motion to remand must be GRANTED.  Federal courts

24

25  [1]  Defendants point to FAC ¶ 38 (alleging that the Patent Applications "falsely identif[y]
    Abramowitz as the "sole inventor"); FAC ¶ 3 (alleging that Abramowitz "made false claims
26  to the [PTO]"); FAC ¶ 46 (asserting that the Patent Application based on the Cyber
    Insurance and Cybersecurity Technologies "fails to mention Palantir and does not include
27  a single Palantir employee as an inventor"); FAC ¶ 51 (alleging that the Patent
    Application based on the Natural Resources Exploration Technology "falsely claim[ed]
28  that he was the "sole owner and inventor")).

have original and exclusive jurisdiction in "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). "Under the well-pleaded complaint rule, . . . whether a claim arises under patent law must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988).

A case can "arise under federal law" in two ways. Gunn v. Minton, 133 S.Ct. 1059, 1064 (2013). First, "a case arises under federal law when federal law creates the cause of action asserted." Id. This "creation test" accounts for "the vast bulk of suits that arise under federal law[.]" Id. (citation omitted). Second, even when a claim "finds its origins in state rather than federal law," the claim nevertheless arises under federal law where it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 1064-65; see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988).

Here, Palantir asserts claims of breach of contract, breach of the implied covenant, misappropriation of trade secrets under California law, declaratory relief, and unfair competition under California law. Federal law does not create any of these causes of action. Thus, the first means of determining federal subject matter jurisdiction does not apply, and only the second means is at issue in the present motion. As explained in Gunn, a state law claim provides a basis for federal jurisdiction where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id., 133 S.Ct. at 1065. All four of these requirements must be met. Id.

To begin, the court considers the first factor – whether resolution of a federal issue is "necessary" to Palantir's case. The only federal issue identified by defendants is the "patent law issue" of inventorship – whether Abramowitz is or is not the inventor and owner of the technology that is the subject of the pending patent applications, and

7

1    whether in filing the Patent Applications, he has falsely claimed to be the inventor.

2         Defendants do not claim that any federal issue is implicated in the causes of action

3    for breach of contract, breach of the implied covenant, misappropriation of trade secrets,

4    or declaratory relief.  They assert only that the "patent law issue" of inventorship is placed

5    at issue by the request in the Prayer for Relief that the court enjoin defendants from

6    "continuing to pursue [d]efendants' patent applications," and by the allegation in the UCL

7    cause of action that "[d]efendants' business acts and practices were fraudulent because

8    a reasonable person would likely be deceived by [d]efendants' false statements and

9    claims, including that they invented and owned Palantir's inventions."

10        A prayer for relief, standing alone, is not sufficient to create federal question

11   jurisdiction.  See Carter v. Health Net of Cal., Inc., 374 F.3d 830, 834 (9th Cir. 2004)

12   ("[t]he valid exercise of federal question jurisdiction . . . depend[s] upon the substantive

13   claims raised[,]" not on any remedy requested).  Moreover, the Prayer for Relief is

14   broader than defendants suggest.  For example, Palantir also seeks an order restraining

15   defendants from "perpetuating the wrongful acts and conduct as set forth [in the FAC]",

16   and from "directly or indirectly retaining, using or disclosing Palantir's trade secret[s],

17   confidential and/or proprietary information, and derivatives thereof."

18        Further, in the fourth cause of action for violation of California's Trade Secrets Act,

19   Cal. Civ. Code § 3426, et seq., Palantir requests that the court "take affirmative acts to

20   protect Palantir's trade secrets," which includes "ordering an inspection of [d]efendants'

21   [document and data depositories] to determine the extent to which Palantir's trade

22   secrets were wrongfully taken and/or disseminated[;]" "ordering the return of Palantir's

23   confidential information[;]" and "prohibiting [d]efendants from continuing [their] unlawful

24   actions."  FAC ¶ 99.

25        Palantir is plainly not seeking to compel any action by the USPTO, and does not

26   request any declaration regarding inventorship.  Rather, it seeks injunctive relief

27   preventing defendants from using and disclosing its trade secrets in violation of California

28   law.  Palantir's prayer for relief in this case is similar to the relief requested in Altavion,

United States District Court
Northern District of California

Inc., v. Konica-Minolta Sys. Lab., Inc., 2008 WL 2020593 (N.D. Cal. May 8, 2008). In that case, the plaintiff filed suit in state court, alleging that the defendants had misappropriated its trade secrets, and had caused patent applications to be filed with the PTO, which were related to the plaintiff's trade secrets. The defendants removed the case, alleging that substantial questions of patent law existed. The plaintiff moved to remand.

The claims asserted were all created by state statutes and common law. The court found that if there was federal jurisdiction over the case, it could be found – if at all – only if the plaintiff's right to relief "necessarily depend[ed] on resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims." Id. 2008 WL 2020593 at *2-3. The court rejected the plaintiff's theory that its request for injunctive relief "necessarily depends on a resolution of 'inventorship'" noting that "each of plaintiff's claims may be a adjudicated and appropriate monetary and injunctive relief may be awarded without resolution of 'inventorship' in the technical sense used in patent law." Id. at *7. Similarly, in this case, Abramowitz's conduct before the USPTO may simply provide evidence supporting the state-law claims asserted in this case, but such evidence does not convert this action into a case "arising under" federal patent laws.

Nor does the UCL claim necessarily raise a federal issue sufficient to confer federal question jurisdiction. Defendants assert that the "only" basis for the UCL claim is Abramowitz's alleged false statements to the USPTO. The court notes, however, that the FAC alleges that defendants' conduct violated the "unlawful" prong of § 17200 because it resulted in violations of state common law, including breach of contract and breach of the implied covenant, as part of an improper effort to deceive and mislead third parties by marketing Palantir's non-trade secret confidential information as their own, see FAC ¶¶ 49, 86, 88; that defendants misled Palantir when they promised not to use or disclose such information "except for the benefit of the company[,]" see FAC ¶¶ 28-30, 71; and that Abramowitz sought to fraudulently associate himself with Palantir by filing a

United States District Court
Northern District of California

1    trademark on "Shire," a term from the same fictional universe as "Palantir," in an attempt

2    to suggest a connection with a company where none existed, see FAC ¶ 56.

3          These allegations are independent of the trade secret misappropriation claims,

4    have nothing to do with the Patent Applications, and are unrelated to Abramowitz's

5    alleged false statements to the USPTO.  The mere fact that the FAC alleges that

6    defendants improperly used and disclosed Palantir's trade secrets in the Patent

7    Applications is not sufficient to create federal jurisdiction over the UCL claim.  This is

8    because resolution of the issue of inventorship is not necessary to resolution of the

9    entirety of the UCL claim, which alleges that defendants' business acts and practices

10   were "unlawful" under the UCL because they resulted in "violations of state common law

11   . . . including breach of contract and breach of the implied covenant of good faith and fair

12   dealing[,]" FAC ¶ 86, and were "fraudulent" because "a reasonable person would likely be

13   deceived by [d]efendants' false statements and claims," FAC ¶ 87, which included false

14   representations that they would maintain Palantir's confidentiality and would not pass

15   Palantir's trade secrets off as their own, FAC ¶¶ 18, 28-30, 45, 48, 52, 55.

16         As in the Altavion case, "[d]efendants' allegedly fraudulent conduct before the

17   USPTO will no doubt be a large part of the proceedings in this action," but the

18   defendants' conduct before the USPTO does not form the exclusive theory upon which

19   Palantir's claims are based.  See id., 2008 WL 2020593 at *6.  In general, if a cause of

20   action asserted in a well-pleaded complaint can succeed on any theory that does not

21   implicate or require a resolution of an issue of federal patent law, that cause of action

22   does not arise under the patent laws for purposes of § 1338(a), even if other theories of

23   recovery are directly dependent on patent law.  See Christianson, 486 U.S. at 810 (citing

24   Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for So. Cal.,

25   463 U.S. 1, 26 (1983)).

26         As for defendants' contention that a claim under § 17200 cannot be premised on

27   an allegation of misappropriation of trade secrets, and their argument at the hearing that

28   Palantir's UCL claim is therefore "dismissible" and "needs to be dismissed by a federal

10

United States District Court
Northern District of California

court on that basis," see Hearing Transcript, Feb. 15, 2017 (Doc. 39) at 14, the court notes that defendants have not filed a motion to dismiss.  The same is true with regard to defendants' contention that the UCL is not pled with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b).  The question whether the UCL cause of action states a claim is not before the court in the present motion for remand, and the court declines to base its ruling on a legal theory that has not been properly presented.

Turning to the second factor, the court finds that the FAC does not create an "actually disputed" issue of federal law.  See Gunn, 133 S.Ct. at 1065-66.  There is no "actually disputed" issue of federal law because the issue of inventorship under federal patent law cannot be decided in this action.  As discussed below, the appropriate vehicle for resolving issues of inventorship is a "derivation proceeding" before the USPTO, where Palantir claims it has already initiated a proceeding as to one of the Patent Applications.  Accordingly, inventorship – the only federal patent issue raised by defendants in their papers – is not "actually disputed" in this case.

Turning to the third factor, the court finds that the FAC does not raise any federal issue that is "substantial."  See Gunn, 133 S.Ct. at 1065-66.  Federal question jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005).  This inquiry looks to "the importance of the issue to the federal system as a whole," rather than "the importance of the issue to the plaintiff's case."  Gunn, 133 S.Ct. at 1066.

Here, defendants contend that the FAC raises claims related to the legal question of "inventorship" under federal law.  The Federal Circuit has articulated three nonexclusive factors that "may help to inform the substantiality inquiry" under the Gunn test – (1) whether a "pure issue of federal law" is "dispositive of the case;" (2) whether "the court's resolution of the issue will control 'numerous other cases;'" and (3) "whether 'the Government has a direct interest in the availability of a federal forum to vindicate its own administrative action.'"  See NeuroRepair, Inc. v. The Nath Law Grp., 781 F.3d 1340,

1   1345 (Fed. Cir. 2015).  Because defendants bear the burden of showing that removal

2   was proper, it is also defendants' burden to show that these factors support jurisdiction in

3   this case.  However, they have failed to do so.

4           Palantir's state-law causes of action for misappropriation of trade secrets and

5   breach of contract do not raise any "substantial" issue related to the federal system of

6   patent law.  There is no "pure issue of federal law" which is dispositive of any of Palantir's

7   claims, because all the claims are state statutory or common-law claims, which can be

8   resolved without reaching the issue of inventorship.  Further, the outcome of the state-law

9   issues at stake here will have little or no impact on another case, particularly a case

10  brought in federal court, and there is no question of governmental interest here.

11          Turning to the fourth factor, the court finds that allowing Palantir's case to remain

12  in federal court would disrupt the federal-state balance of power.  See Gunn, 133 S.Ct. at

13  1068; see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308,

14  313-14 (2005).  "Arising under" jurisdiction exists only "where the vindication of a right

15  under state law necessarily turn[s] some construction of federal law[,]" Merrell Dow

16  Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986), and it is not enough that the court

17  may have to interpret federal laws or regulations.  Improper disclosure of trade secrets

18  constitutes an independent violation of California's Uniform Trade Secrets Act, and

19  California courts may enjoin such actual or threatened trade secret misappropriation.  As

20  previously noted, the Patent Applications may provide evidence of defendants'

21  misappropriations of trade secrets, but that that does not transform the state-law claims

22  into the small category of cases in which "arising under" jurisdiction lies.  See Gunn, 133

23  S.Ct. at 1064.

24          Finally, and in the court's view, most importantly, defendants have not explained

25  how this case could be maintained in federal court under the court's exclusive jurisdiction

26  over patent claims when no patent has issued on the applications filed by Abramowitz.

27  Defendants accuse Palantir of having "artfully pled" the complaint to include only state

28  law claims, see Notice of Removal ¶ 2, but they do not specify a federal cause of action

United States District Court
Northern District of California

1   that Palantir should or could have pled.  While it is true that "issues of inventorship,

2   infringement, validity, and enforceability present sufficient substantial questions of federal

3   patent law to support jurisdiction under section 1338(a)," see Bd. of Regents, Univ. of

4   Tex. Sys. v. Nippon Tel. & Tel., 414 F.3d 1358, 1363 (Fed. Cir. 2005), a dispute involving

5   a request for equitable relief relating to a claim of inventorship in connection with a

6   pending patent application can only be resolved by the Director of the USPTO.  See HIF

7   Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd., 600 F.3d 1347, 1353 (Fed. Cir. 2010).

8       Palantir could not have asserted a claim of correction of inventorship, as no patent

9   has issued.  35 U.S.C. § 116.  There is no private right of action to challenge inventorship

10  of pending patent applications.  See HIF Bio, 600 F.3d at 1354.  Under 35 U.S.C. § 116,

11  "[w]henever through error a person is named in an application for patent as the inventor,

12  or through error an inventor is not named in an application, the Director may permit the

13  application to be amended accordingly, under such terms as he prescribes."  The text of

14  § 116 grants the Director of the USPTO the authority to take certain actions, but plainly

15  does not create a cause of action in the district courts to modify inventorship on pending

16  patent applications.  See Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 n.1 (Fed.

17  Cir. 2004).  On the other hand, once the patent issues, the statute that allows the Director

18  of the USPTO to correct the named inventor on a patent, 35 U.S.C. § 116, also provides

19  a private right of action to challenge inventorship, within the original jurisdiction of the

20  federal district court.  See HIF Bio, 600 F.3d at 1354.

21      There can thus be no "inventorship" challenge under the procedural facts of this

22  case.  And, in any event, the state-law claims must necessarily be resolved without

23  reliance on patent law because patent law is not a necessary element of any of the

24  claims as pled.  See Christianson, 486 U.S. at 809.  The fact that Palantir's proposed

25  remedy may tangentially involve issues touching on patent ownership does not convert

26  the state law claims into federal law claims – particularly where no patents have issued.

27  Moreover, this court lacks the authority to determine inventorship of patent applications.

28  Removal was improper, and the case must be remanded.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

In accordance with the foregoing, the motion to remand is GRANTED.  The motion for fees and costs is DENIED.

**IT IS SO ORDERED.**

Dated:  March 9, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge

14